IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

**FILED** Eastern District of Kentucky
JUN 28 2018
AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | |
|---|---|
| **GRETCHEN SCHMIDT**<br>2237 GENEVIEVE LN<br>COVINGTON, KY 41011<br><br>**PLAINTIFF**<br><br>-VS.<br><br>**ST. ELIZABETH HEALTHCARE**<br>1 MEDICAL VILLAGE DR.<br>EDGEWOOD, KY 41017<br><br>**DEFENDANT** | **CASE NO.**<br><br>**JUDGE**<br><br><br><br>**COMPLAINT WITH JURY<br>DEMAND ENDORSED HEREON** |

Plaintiff Gretchen Schmidt ("Plaintiff" or "Schmidt"), by and through counsel, hereby states as follows for her Complaint.

## PARTIES

1. Plaintiff is, and at all relevant times was, a citizen of the state of Kentucky and a resident of Kenton County, Kentucky.

2. Defendant St. Elizabeth Healthcare ("Defendant," or "St. Elizabeth") is a Kentucky Corporation.

## JURISDICTION & VENUE ALLEGATIONS

3. This Court has jurisdiction to hear Plaintiff's Complaint pursuant to 28 U.S.C. § 1331.

4. This Court has pendent jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

6. All jurisdictional and procedural prerequisites have been met:

a. On September 28, 2017, within 180 days of the occurrence of the unlawful employment practices alleged in this Complaint, Schmidt made a filing with the Equal Employment Opportunity Commission (EEOC). A true copy is attached as Exhibit 1 (Charge No. 473-2017-01180, Cincinnati EEOC Office).

b. On April 2, 2018, the EEOC issued Schmidt a "Notice of Suit Rights," i.e., a "right-to-sue" letter. A true copy of the same is attached as Exhibit 2 and incorporated herein by reference.

c. Under 42 U.S.C. §2000e, Schmidt may now bring her own civil action against the respondents named in the OCRC/EEOC charge.

## FACTS

7. Until early 2017, Schmidt worked as a Registered Nurse at St. Elizabeth, where she had been employed for approximately the past twelve years.

8. Schmidt had previously worked at St. Elizabeth from 1988 to 1996.

9. Plaintiff was fully qualified for her position.

10. At all relevant times, Plaintiff was an employee of St. Elizabeth within the meanings of federal and state law, including 42 U.S.C. §§ 2000e et seq. and Ky.Rev.Stat. § 344.040.

11. While employed at St. Elizabeth, Schmidt participated in a program where she worked a twelve hour shift every Saturday and every Sunday, and was considered full-time.

12. Schmidt received promotions and raises over the years, and reached the top of the pay scale for her position.

13. Prior to the date she was terminated, Plaintiff exercised her right to take leave

pursuant to the FMLA on several occasions, including in 2013, 2014 and 2016.

14. In early 2017, Schmidt took planned medical leave to have surgery on her right foot after she began experiencing severe pain in that foot, as well as back pain and migraines.

15. She kept St. Elizabeth up to date with her progress.

16. Schmidt was informed by St. Elizabeth in April of 2017 that she could return to work when cleared by her doctor, and began making arrangements to return.

17. Subsequently, Schmidt learned from her doctors that she would need to have surgery on her left foot and also on her back.

18. The condition that required Schmidt to have surgery on her left foot was a bunion, which required an operation known as a bunionectomy.

19. The condition that required Schmidt to have surgery on her back was chronic bilateral lower back pain. (An MRI and X-Ray revealed L4 to L5 anterolisthesis and scoliosis and moderate multifactorial spondylotic changes with multi-level canal and foraminal stenosis; abnormal alignment with mild scoliosis convex right and minimal grade 1 spondylolisthesis of L3-4 and L4-5 levels; and facet hypertrophy spondylosis and disk loss.)

20. These conditions substantially limited in Schmidt the major life activities of performing manual tasks, standing, bending, reaching, lifting, and working, among others.

21. To minimize the amount of work she would have to miss, Schmidt arranged to have both surgeries sometime around August 1, 2017 and recover from both of them simultaneously.

22. Of the leave Schmidt had been granted for the first surgery, she had twelve weeks remaining.

23. When Schmidt informed St. Elizabeth's medical leave office of her need for additional medical leave, the retaliation started.

24. In early May, she received a call from her manager, Deb Augsback.

25. Ms. Augsback informed Ms. Schmidt that a meeting with HR would be required before she could return to work.

26. The meeting was not required until Schmidt informed St. Elizabeth of her need for additional surgeries and requested additional leave.

27. A meeting was scheduled for May 3, 2017.

28. Schmidt decided to bring an attorney with her to the meeting because feared St. Elizabeth was discriminating and retaliating against her.

29. Brandi Cornet, an HR manager, was very upset that Ms. Schmidt had engaged an attorney.

30. Ms. Cornet refused to allow Schmidt's lawyer to participate in the meeting, stating that it is was St. Elizabeth's policy not to allow employees to have attorneys present at such a meeting.

31. Ms. Cornet then sent Ms. Schmidt an email stating she would be terminated if she did not appear the following morning without an attorney.

32. After receiving this threat, Schmidt attended the meeting.

33. At the meeting, where Ms. Cornet and Ms. Augsback were present, Ms. Schmidt was told there were issues they wanted to address with her, and had her type a written response to two issues raised.

4

34. These "issues" were raised long after the fact and were clearly pretextual.

35. One was a complaint supposedly received on January 8, 2017 wherein Ms. Schmidt was accused of being rude to a heroin-addicted patient who had given birth under a bridge.

36. The other was an unverified complaint supposedly received after Ms. Schmidt had gone on medical leave that she had administered pain medication to a hospice cancer patient without his consent.

37. Not only were these issues not raised until after Ms. Schmidt requested additional medical leave - neither of these alleged offenses are terminable according to St. Elizabeth's employee handbook, which contains a "progressive discipline" policy that was not followed.

38. Schmidt was then placed on administrative leave, and was subsequently fired.

## COUNT I

### DISABILITY DISCRIMINATION – UNDER THE ADA

39. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

40. Plaintiff was a qualified individual capable of performing the essential functions of her job position with reasonable accommodation.

41. At all times relevant to this case, Plaintiff suffered from a disability as defined by the ADA, as explained above.

42. Defendant was aware of Plaintiff's disability.

43. Defendant regarded Plaintiff as disabled.

44. Defendant discriminated against Plaintiff by failing to provide Plaintiff reasonable requested accommodations for her disability, by treating her differently than similarly-situated,

nondisabled employees, and by terminating Plaintiff because of Plaintiff's disability and/or because Defendant regarded Plaintiff as disabled.

45. Defendant discriminated against Plaintiff by replacing her with a non-disabled employee, and/or by retaining nondisabled employees, because of Plaintiff's real or perceived disability.

46. Defendant discriminated against Plaintiff without legitimate reason or rationale.

47. Defendant's conduct violated the ADA.

48. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged and is entitled to judgment and damages.

## COUNT II

### DISABILITY DISCRIMINATION – UNDER KENTUCKY LAW

49. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

50. Plaintiff was a qualified individual capable of performing the essential functions of her job position with reasonable accommodation.

51. At all times relevant to this case, Plaintiff suffered from a disability as defined by the Kentucky Civil Rights Act (KCRA), Ky.Rev.Stat. § 344.040(1), as explained above.

52. Defendant was aware of Plaintiff's disability.

53. Defendant regarded Plaintiff as disabled.

54. Defendant discriminated against Plaintiff by failing to provide Plaintiff reasonable requested accommodations for her disability, by treating her differently than similarly-situated, nondisabled employees, and by terminating Plaintiff because of Plaintiff's disability and/or because Defendant regarded Plaintiff as disabled.

55. Defendant discriminated against Plaintiff by replacing her with a non-disabled employee, and/or by retaining nondisabled employees, because of Plaintiff's real or perceived disability.

56. Defendant discriminated against Plaintiff without legitimate reason or rationale.

57. Defendant's conduct violated the KCRA.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged and is entitled to judgment and damages.

## COUNT III

### AGE DISCRIMINATION – UNDER THE ADEA

59. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

60. Plaintiff was fully qualified for her position.

61. Plaintiff was 66 years old at the time she was fired.

62. Defendant treated Plaintiff less favorably than substantially younger employees, by terminating her employment on account of her age.

63. Defendant replaced Plaintiff with a substantially younger individual and/or retained substantially younger employees on account of her age.

64. Defendant's conduct was intentional, willful, wanton and malicious.

65. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the ADEA, including economic, non-economic and punitive damages, in an amount to be proven at trial.

## COUNT IV

### AGE DISCRIMINATION – UNDER KENTUCKY LAW

66.     Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

67.     Plaintiff was fully qualified for her position.

68.     Plaintiff was 66 years old at the time she was fired.

69.     Defendant treated Plaintiff less favorably than substantially younger employees, by terminating her employment on account of her age.

70.     Defendant replaced Plaintiff with a substantially younger individual and/or retained substantially younger employees on account of her age.

71.     Defendant's conduct was intentional, willful, wanton and malicious.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to compensation pursuant to the KCRA, Ky.Rev.Stat. § 344.040(1), including economic, non-economic and punitive damages, in an amount to be proven at trial.

## COUNT V

### ERISA §§ 502 et 510

73.     Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

74.     Defendant granted certain employee healthcare benefits to Plaintiff.

75.     Defendant knowingly terminated Plaintiff's employment in retaliation for the vesting and/or to avoid the further vesting of these benefits in violation of ERISA.

76.     Defendant's conduct was willful, wanton, and malicious in nature.

77. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages.

## COUNT VI

### RETALIATION – UNDER THE ADA & KENTUCKY LAW

78. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

79. As explained above, Plaintiff engaged in protected activity under the ADA and the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.040(1), including but not limited to, by requesting an accommodation for a disability.

80. Defendant knew of Plaintiff's participation in the protected activity, as it acknowledged her request for an accommodation.

81. Defendant engaged in retaliatory conduct against Plaintiff by taking the adverse employment action of firing Plaintiff.

82. Defendant also retaliated against Plaintiff for engaging in protected activities by treating her less favorably than other non-complaining employees.

83. A causal link exists between the protected activity and the adverse employment action.

84. Defendant's above-described actions were fraudulent, malicious, wanton and willful, gross and egregious, exhibited a conscious disregard for the rights of Plaintiff, and had a great probability of causing substantial harm.

85. Plaintiff suffered damages as a result.

**WHEREFORE**, Plaintiff Gretchen Schmidt respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of $75,000, to include:

    a.    Reinstatement, with all benefits and full seniority effective as of her last day of work;

    b.    Back pay;

    c.    Front pay;

    d.    Compensatory damages for emotional distress, mental anguish, and pain and suffering;

    e.    Punitive damages;

    f.    Court costs, expenses, prejudgment interest, postjudgment interest and attorney's fees; and

    g.    Any other relief authorized by law and deemed just and proper.

Respectfully submitted,

*/s/ Alexander J. Durst*

Alexander J. Durst (Ohio Bar No. 0089819)
(To be admitted pro hac vice)
Attorney for Plaintiff
The Durst Law Firm
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Tel: (513) 621-2500
Fax: (513) 621-0200
Email: alex@durstlawfirm.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

*/s/ Alexander J. Durst*

Alexander J. Durst    0089819